JOSEPH P. MOTT ET AL. *v.* GAER BROTHERS, INC.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 122809

Memorandum filed August 9, 1961

*Alcorn, Bakewell & Smith,* of Hartford, for the plaintiffs.

*Harry L. Nair,* of Hartford, for the defendant.

RYAN, J. In this action, the plaintiffs have moved for judgment and seek an order directing the defendant Gaer Brothers, Inc., to proceed with an arbitration in compliance with an arbitration agreement or, in the alternative, an order appointing an arbitrator to carry out the terms of said arbitration agreement.

On April 23, 1953, the parties entered into an agreement in writing, a copy of which is attached to the complaint as exhibit A. Paragraphs 11 and 12 of the agreement prescribe the method of determining the amount and method of payment of rent to be paid by the parties when and if the merchandising agreement contained therein should be terminated. The parties ceased doing business together under the merchandising provisions of the agreement in October, 1956. Since that time they have been in litigation over an accounting of their respective liabilities and payments under the merchandising portion of the agreement. The litigation has been referred to a state referee for arbitration and is still pending. No mutual agreement on the amount payable as rent has been reached between the parties because of the very obvious existence of an unrelenting feud that appears to become worse with each passing year.

On July 25, 1960, the plaintiffs notified the defendant of their intention to proceed to arbitrate the controversy between the parties respecting the rent due under the provisions of paragraphs 11 and 12 of the agreement and designated an arbitrator in accordance with the provisions thereof. The defendant has neglected and refused to designate an arbitrator and in its answer, while admitting that exhibit A is a copy of an agreement between the parties, denies all the other allegations of the plaintiffs' complaint and has set up a special defense alleging that the agreement had been abandoned by

the parties and that paragraphs 11 and 12 of the agreement are no longer in force and effect and are not binding on either the plaintiffs or the defendant. The defense of res judicata is asserted, predicated upon the decision of this court which was affirmed by the Supreme Court of Errors in *Gaer Bros., Inc.* v. *Mott,* 147 Conn. 411, which decision was announced on June 14, 1960. This was a partition action brought by Gaer Brothers in which the Motts moved for a partition by sale. Gaer Brothers claimed that a landlord and tenant relationship existed by virtue of the same agreement of April 23, 1953, and filed a motion that the court in any decree ordering a sale of the property provide that Gaer Brothers might occupy the portion of the premises then occupied by it for one year from the date of sale, upon such terms as the court should prescribe. The trial court ordered a partition by sale and denied Gaer Brothers the right to continue its occupancy. On appeal by Gaer Brothers the Supreme Court of Errors affirmed the action of the trial court. It held that the parties had abandoned the contract and that the terms of the agreement providing that a party remaining in occupancy would pay "rent" into a joint account in an amount to be fixed by agreement or arbitration were insufficient to show an intent that there should be a landlord and tenant relationship after the parties ceased doing business together. The language of the court is quite clear.

"When in 1956 the parties ceased doing business together, the essential purpose of the contract was defeated. The parties had contemplated that possibility and made provision for it in their agreement by stating that the party or parties who continued to occupy the premises should pay rent into a joint account. Occupancy under these circumstances was a substitute for the advantages of doing business together and sharing, proportionately, all the ex-

penses arising from the joint ownership and occupancy. No term is stated, no fixed amount of rent is mentioned. The agreement had none of the formalities of a lease. See General Statutes § 47-19. The manifest understanding was that if the parties ceased doing business together and either the plaintiff or the defendants, or all of them, continued to occupy the premises, some other arrangement for meeting the obligations of the bank mortgage and the expenses of the building would be necessary. Therefore, provision was made for paying rent. If the amount could not be fixed by agreement, the question could be submitted to arbitration." *Gaer Bros., Inc.* v. *Mott,* supra, 416.

The court was not obliged to and did not determine in that case whether or not the abandonment of the contract terminated the provisions of paragraphs 11 and 12 of the agreement. The defense of res judicata cannot be sustained.

Paragraphs 11 and 12 of the agreement provide specifically for the arbitration of a dispute concerning the amount of rent to be paid "[i]f this agreement is terminated at any time, resulting in the parties ceasing doing business with each other as hereinafter provided." "It is true that the contract provided for a term during which it should be in force, and a method by which its life could be brought to an end. But that is not to say that the parties could not, by their conduct, abandon the contract." *Gaer Bros., Inc.* v. *Mott,* supra. The plaintiffs claim that the agreement to arbitrate continues in effect even though the remainder of the contract was abandoned. " 'The contract is not put out of existence, though all further performance of the obligations undertaken by each party in favour of the other may cease. It survives for the purpose of measuring the claims arising out of the breach, and the arbitration clause survives for determining

the mode of their settlement. The purposes of the contract have failed, but the arbitration clause is not one of the purposes of the contract.' *Heyman* v. *Darwins, Ltd.* [(1942) A.C. 356, 374].... We add our approval to the British doctrine so far as it pertains to contracts providing for arbitration of disputes which involve something more than the determination of an appraisal or the setting of a value. 6 Corbin, Contracts, p. 758; see *Robinson* v. *National Fraternal League,* 81 Conn. 707, 710 . . .; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 395 . . . ." *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 10, 11. It seems clear to the court that the provisions of paragraphs 11 and 12 of the agreement were intended by the parties to remain in force even after abandonment of the contract in all other respects. The question then arises whether the agreement calls for an arbitration within the meaning of General Statutes § 52-408 or a mere appraisal or the setting of a value.

Section 52-408 provides for settling by arbitration "any controversy thereafter arising." The state of New York adopted arbitration legislation about nine years prior to the adoption of similar legislation in Connecticut. In the leading New York case, there was an agreement that the purchase price of stock be fixed by three arbitrators, one appointed by each party and the third by the other two. The two appointed were unable to agree on the third arbitrator and, under the provisions of a statute similar to our § 52-411, application was made to the court to appoint the third arbitrator. The court held that such a contract does not come within the letter or the spirit of the arbitration law. It is not an agreement to settle a controversy between the parties but is one to avoid a possible controversy by leaving the settlement of a question to third parties who are not expected to settle the

matter in a quasi-judicial manner. " 'In order to constitute a submission to arbitration there must be some difference or dispute, either existing or prospective, between the parties and they must intend that it should be determined in a quasi-judicial manner. Therein lies the distinction between an agreement for a valuation and a submission to arbitration, for in the case of a valuation there is not as a rule any difference or dispute between the parties and they intend that the valuer shall without taking evidence or hearing argument, make his valuation according to his own skill, knowledge or experience.' " *Matter of Fletcher,* 237 N.Y. 440, 445. In 1941, the New York counterpart of our § 52-408 was amended as follows: "Such submission or contract may include questions arising out of valuations, appraisals or other controversies which may be collateral, incidental, precedent or subsequent to any issue between the parties." N.Y. Civ. Prac. Act § 1448. Obviously, New York no longer is confronted with the problem illustrated in the *Fletcher* case, supra. There has been no similar legislative enactment in Connecticut.

An agreement to pay upon exchange of lands an amount to be agreed on later or, if the parties could not agree, the amount to be fixed by arbitrators to be named by the parties was held to be an agreement for appraisement or estimate rather than for arbitration. *First Ecclesiastical Society* v. *Besse,* 98 Conn. 616. An agreement to refer an incidental matter, calculation, or appraisal, the decision of which is not conclusive as to the ultimate rights of the parties, was not a "submission to arbitration" within the meaning of the New York statute. *In re Culbertson,* 18 N.Y.S.2d 815, 817. There, the appointment of a third arbitrator was sought. If the arbitrators are themselves experts and base their decision on their own investigations, it is limited arbi-

tration (appraisal). *Sands* v. *Union Pac. R. Co.,* 148 F. Sup. 422, 425; see *Karasch* v. *Empire Mutual Ins. Co.,* 175 N.Y.S.2d 690; *Shepard & Morse Lumber Co.* v. *Collins,* 198 Ore. 290; 6 Corbin, Contracts § 1442; 6 Williston, Contracts (Rev. Ed.) § 1921A; 33 Va. L. Rev. 494; Sturges, Commercial Arbitrations and Awards §§ 20, 21, 45.

In the instant case, the so-called arbitrators were to be real estate experts from the Hartford area, who were to determine the rental value of the premises according to their skill as appraisers, without evidence or argument. Arbitration presupposes a quasi-judicial hearing with witnesses, oaths, and the taking of testimony. An arbitration award determines the entire question of ultimate liability and after confirmation may be the basis for entry of judgment. Under paragraph 12 of the agreement, the "arbitrators" are to determine a mere question of fact upon which the assertion of rights may thereafter be based, but they are not authorized to determine the ultimate liability of the parties. Even if the rental were to be fixed by them, this would not settle the matter. It would still require a determination by a court of the respective rights and liabilities of the parties. The court is therefore required to find that the agreement is for an appraisal. It is not an agreement to settle by arbitration any controversy arising out of the contract of the parties within the meaning of § 52-408.

Judgment may enter for the defendant.