MIDDLESEX MUTUAL ASSURANCE COMPANY *v.*
EDWARD CLINTON ET AL.
(13428)

LANDAU, SCHALLER and SPEAR, Js.

Argued March 21—decision released August 1, 1995

*Judith Clinton,* pro se, the appellant (defendant Judith Clinton).

*Joel J. Rottner,* with whom was *Barbara Sacks,* for the appellee (plaintiff).

LANDAU, J. The defendant Judith Clinton appeals from the judgment of the trial court ordering her to proceed with an appraisal.[1] She claims that the trial court (1) did not have jurisdiction to consider the plaintiff's application to compel the appraisal and (2) improperly granted the application to compel the appraisal because (a) the court failed to consider the rights of the parties, (b) General Statutes §§ 52-410 and 52-411 provide statutory relief only for an aggrieved insured, not an insurer, and (c) the plaintiff presented no evidence of an appraisal agreement or of a dispute as to the value of the loss.

---

[1] While Edward Clinton and Judith Clinton were the two defendants in the underlying action, only Judith Clinton, hereinafter the defendant, has appealed.

The following facts are relevant to our consideration of the defendant's claims. On April 21, 1993, Edward Clinton and Judith Clinton suffered a loss by fire at premises owned by them and insured by the plaintiff under a homeowner's policy. After the parties were unable to agree as to the value of the loss, the plaintiff appointed an appraiser pursuant to an appraisal clause in the insurance policy.[2] After the Clintons failed to appoint an appraiser, they were served with an application for an order to proceed with an appraisal and for the appointment of an appraiser pursuant to §§ 52-410 and 52-411.[3] The trial court conducted a hear-

[2] The appraisal clause provided: "If [the insured] and [the insurer] fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, [the insured] or [the insurer] may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

Our Supreme Court has held that such a clause, which is required by the standard form of fire insurance policy set forth in General Statutes § 38a-307, constitutes an agreement to arbitrate and falls within the ambit of our arbitration statutes, General Statutes §§ 52-408 through 52-424. *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 432, 534 A.2d 213 (1987); *Covenant Ins. Co.* v. *Banks*, 177 Conn. 273, 279, 413 A.2d 862 (1979).

[3] General Statutes § 52-410 provides: "APPLICATION FOR COURT ORDER TO PROCEED WITH ARBITRATION. (a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law.

"(b) The complaint may be in the following form: '1. On          , 19   , the plaintiff and the defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. 2. The defendant has neglected and refused to perform the agreement for arbitration, although the plaintiff is ready and willing to perform the agreement. The

ing on the plaintiff's application and, on March 8, 1994, granted the application and ordered the Clintons to proceed to appraisal.[4] This appeal by the defendant followed.

plaintiff claims an order directing the defendant to proceed with an arbitration in compliance therewith.'

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

General Statutes § 52-411 provides: "APPOINTMENT OF ARBITRATOR OR UMPIRE. (a) If, in a written agreement to arbitrate, a method of appointing an arbitrator or arbitrators or an umpire has been provided, the method shall be followed.

"(b) If no method is provided therein, or if a method is provided and any party thereto fails to use the method, or if for any other reason there is a failure in the naming of an arbitrator or arbitrators or an umpire, or if any arbitrator or umpire dies or is unable or refuses to serve, upon application by a party to the arbitration agreement, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall appoint an arbitrator or arbitrators or an umpire, as the case may require. A person so appointed an arbitrator or umpire shall act under any arbitration agreement with the same force and effect as if he had been specifically named or referred to therein. Unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator.

"(c) An application under this section and the proceedings thereon shall conform to the application and proceedings provided for in section 52-410, except that such changes shall be made in the complaint as may be necessary to correctly and concisely state the plaintiff's claim."

[4] In addition to ordering the Clintons to proceed to appraisal, the trial court ordered (1) that the Clintons would have until March 18, 1994, to designate an appraiser, (2) that the Clintons' appraiser and the plaintiff's appraiser would have until March 28, 1994, to appoint an umpire and (3) that if the Clintons failed to appoint an appraiser or the parties failed to agree on an umpire, the court would appoint an umpire.

We note that "[a]n order directing the parties to proceed with arbitration is a final judgment from which one can appeal. . . ." (Citations omitted; internal quotation marks omitted.) *Smith & Smith Building Corp.* v. *DeLuca*, 36 Conn. App. 839, 841, 654 A.2d 368 (1995). Thus, we have the requisite jurisdiction for appellate review.

## I

The defendant first challenges the trial court's authority to have heard the plaintiff's application to compel appraisal. Specifically, she argues that the court lacked jurisdiction because (1) the plaintiff filed its application on Form JD-CV-1, which Practice Book § 49 excludes from use in matters pertaining to arbitration, (2) the plaintiff failed to make a proper appearance, (3) the plaintiff changed the return date on the original writ from March 1, 1994, to March 8, 1994, before the writ was served on the defendant, (4) the plaintiff included a recognizance in its application, (5) the plaintiff failed to attach a copy of the arbitration agreement to its application as an exhibit, (6) a contract of appraisal does not grant the trial court power to appoint an arbitrator or to order arbitration and (7) the plaintiff failed to achieve personal service on all the defendants. We will consider the defendant's arguments seriatim.

## A

The defendant first argues that the trial court lacked jurisdiction because the plaintiff filed its application to compel appraisal on Form JD-CV-1. She asserts that Practice Book § 49, which outlines the requirements for mesne process, provides that "Form JD-CV-1 shall not be used in . . . [p]roceedings pertaining to arbitration."

A defect in process, such as an improperly executed writ, implicates personal jurisdiction, rather than subject matter jurisdiction. *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 551, 610 A.2d 1260 (1992). Our Supreme Court has held, however, in the context of an administrative appeal, that the improper use of Form JD-CV-1 does not defeat the Superior Court's jurisdiction "[a]s long as it contains a proper citation, signed by a competent authority . . . ." *Chestnut*

*Realty, Inc.* v. *Commission on Human Rights & Opportunities*, 201 Conn. 350, 356, 514 A.2d 749 (1986). In *Chestnut Realty*, "the court examined the contents of the form and, finding that the information adequately gave notice to the defendant of the nature of the proceedings, it concluded that, absent a showing of prejudice by the defendant, the use of the incorrect form did not mandate dismissal of the administrative appeal." *Carlson* v. *Fisher*, 18 Conn. App. 488, 493, 558 A.2d 1029 (1989).

We conclude that the same reasoning is applicable in the context of this case. " 'It is elementary that the [defendant] cannot be bound by the action of the court without reasonable notice and an opportunity to be heard.' " *Middlesex Ins. Co.* v. *Castellano*, 225 Conn. 339, 344, 623 A.2d 55 (1993). In this case, the defendant, while served with the incorrect form, nonetheless received actual notice of the proceedings. She was personally served on February 24, 1994, with the Form JD-CV-1 writ, the plaintiff's application to compel appraisal and an order to appear on March 7, 1994, and show cause why the application should not be granted. On the following day, February 25, 1994, the defendant filed an appearance, an answer and a motion to dismiss the defendant's application. Also, the defendant personally appeared at the March 7 show cause hearing. Thus, because the contents of the form adequately gave notice to the defendant of the nature of the proceedings and because the defendant has not shown prejudice arising from the use of the incorrect form, we must conclude that the plaintiff's lack of compliance with Practice Book § 49 was not fatal to the trial court's jurisdiction.

B

Our conclusion that the plaintiff's use of Form JD-CV-1 in this matter was harmless dictates that the

defendant's next argument must fail. She asserts that the plaintiff failed to make a proper appearance because its appearance was made by virtue of the Form JD-CV-1 writ, which may not be used in matters pertaining to arbitration. Because its underlying premise is not supportable, this claim is without merit.

C

The defendant next argues that the plaintiff's alteration of the return date deprived the trial court of jurisdiction. The application to compel appraisal was originally made returnable to the court on March 1, 1994. On February 24, 1994, the serving sheriff contacted counsel for the plaintiff and reported that he had been unable to locate the defendant until that day. Counsel for the plaintiff authorized the sheriff to alter the return date from March 1 to March 8, 1994, before serving the defendant.[5]

The defendant relies on *Denison* v. *Crafts*, 74 Conn. 38, 49 A. 351 (1901), for the proposition that a plaintiff cannot lawfully change the return date in his writ after its issue and before service, unless the writ is reissued at the time of the alteration. The defendant's reliance on this case, however, is misplaced. In *Denison*, the court held that a pro se plaintiff did not have the authority to alter process. *Denison* has since been cited for the proposition that only the issuing authority can change the return date of a writ. 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1982) § 21b. In the case at hand, the alteration of the return date was made with the express authorization of the plaintiff's counsel, a commissioner of the Superior Court duly authorized to issue writs.[6] For this reason, we conclude that the alter-

---

[5] The plaintiff alleges in its appellate brief that the reason for the alteration was to provide the defendant with a sufficient amount of time between service and the return date.

[6] General Statutes § 52-45a provides in pertinent part: "COMMENCEMENT OF CIVIL ACTIONS. CONTENTS AND SIGNATURE OF PROCESS. Civil actions

ation of the return date is not, as the defendant claims, a jurisdictional defect.

In a subsidiary argument, the defendant asserts that the March 1, 1994 return date, which was subsequently altered, did not give her enough time to respond under the applicable accelerated pleading schedule of General Statutes § 52-410 (c), which provides that "[t]he parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day . . . ."[7] Because the alteration was effective, however, the return date was March 8, 1994. The defendant was served on February 24, 1994, giving her a legally sufficient eight days within which to file an answer.

## D

The defendant also contends that the trial court's jurisdiction was affected by the plaintiff's inclusion of a recognizance in its application to compel appraisal. She argues that the provision of a recognizance was improper because a recognizance is not required in arbitration proceedings. *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 345–46, 494 A.2d 606, cert. denied, 197 Conn. 806, 499 A.2d 57 (1985) (plaintiff's application to compel arbitration pursuant to § 52-410 not subject to dismissal on basis of lack of recognizance). The court in *Fishman* noted that arbitration proceedings are " 'intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation.' *In re Curtis-Castle Arbitration*, 64

shall be commenced by legal process consisting of a writ of summons . . . . The writ . . . shall be signed by a commissioner of the superior court . . . ."

General Statutes § 51-85 provides in pertinent part: "Each attorney-at-law admitted to practice within the state, while in good standing, shall be a commissioner of the superior court and, in such capacity, may, within the state, sign writs . . . ."

[7] See footnote 3.

Conn. 501, 511, 30 A. 769 (1894) . . . ." (Citations omitted.) Id., 345. "To the extent that arbitration proceedings are viewed as requiring all the formal trappings of civil actions, those policies would be frustrated." Id. Just as the *Fishman* court determined that the omission of a recognizance did not defeat the trial court's jurisdiction to hear an application to compel arbitration, we conclude that the inclusion of the same, albeit an unnecessary "formal trapping of civil actions," likewise does not undermine the court's jurisdiction.

### E

The defendant next argues that the plaintiff's application to compel appraisal was defective because the plaintiff failed to attach a copy of the arbitration agreement, as required by § 52-410. The plaintiff admits that it did not attach a copy of the arbitration agreement to its application, but asserts that § 52-410 permits but does not require such an attachment.

"In order to resolve the issue presented to us, we must resort to statutory interpretation in accordance with well defined principles that require that we ascertain and give effect to the apparent intent of the legislature. . . . To determine the intent of the legislature, we first consider whether the statutory language yields a plain and unambiguous resolution. . . . If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and we need inquire no further. . . . The words of a statute must be interpreted according to their ordinary meaning unless their context dictates otherwise. . . ." (Citations omitted; internal quotation marks omitted.) *State v. Burns*, 38 Conn. App. 8, 12, 658 A.2d 163 (1995).

Section 52-410 (b) provides in part that an application to compel arbitration "*may be* in the following form: '1. On            , 19   , the plaintiff and the

defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. . . .' "[8] (Emphasis added.) We must conclude, therefore, that the statute is permissive rather than mandatory regarding the attachment of a copy of the arbitration agreement. Thus, while the attachment of an arbitration agreement pursuant to a § 52-410 application is desirable and encouraged, the plaintiff's failure to do so was not a statutory violation and did not affect the jurisdiction of the trial court to hear the matter.

## F

The defendant next challenges the trial court's jurisdiction by relying on *Mott* v. *Gaer Bros., Inc.*, 22 Conn. Sup. 449, 174 A.2d 549 (1961), for the proposition that a contract of appraisal does not grant the trial court the authority to create an order to proceed with arbitration. In *Covenant Ins. Co.* v. *Banks*, 177 Conn. 273, 279–80, 413 A.2d 862 (1979), however, our Supreme Court concluded that an appraisal clause in a fire insurance policy, required under General Statutes § 38a-307, constitutes a written agreement to arbitrate within the meaning of §§ 52-410 and 52-411. See also *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 432, 534 A.2d 213 (1987). The defendant's claim, therefore, is without merit.

## G

Finally, the defendant argues that because the plaintiff failed to achieve personal service on all the defendants, the application was not properly before the trial court. The defendant does not contest that she was personally served. Rather, she asserts that only abode service was achieved on the defendant Edward Clinton.

---

[8] See footnote 3.

A similar claim was made in *Bridgeport* v. *Debek*, 210 Conn. 175, 554 A.2d 728 (1989), where the defendants asserted that the trial court lacked subject matter jurisdiction to entertain the plaintiff's foreclosure action because the plaintiff failed to serve all the defendants in a timely manner. Our Supreme Court held that "[o]ur precedents make it abundantly clear that, except in the special circumstances of administrative appeals, defects in process do not deprive a court of subject matter jurisdiction." Id., 179. Because the defect in service implicated only the court's in personam jurisdiction, the Supreme Court held that the trial court had jurisdiction to consider the case on its merits as to the defendants who had been properly served. Id., 179–80. Similarly, we conclude that the plaintiff's failure to serve Edward Clinton personally did not deprive the trial court of subject matter jurisdiction in this case. Because the court had subject matter jurisdiction to consider the application to compel appraisal and personal jurisdiction over the defendant, we conclude that this claim must fail.

II

The defendant's second claim is that the trial court improperly granted the plaintiff's application to compel appraisal.[9] She argues (1) that the court failed to consider the rights of the parties, (2) that §§ 52-410 and 52-411 provide statutory relief only for an aggrieved insured, not an insurer, and (3) that the plaintiff presented no evidence of an appraisal agreement or of a dispute as to the value of the loss.

A

Section 52-410 (c) provides that the trial court, after hearing an application for order to proceed with arbitration, "shall either grant the order or deny the appli-

---

[9] See footnote 4.

cation, according to the rights of the parties."[10] The defendant argues that the trial court failed to consider the rights of the parties before ordering her to proceed with appraisal. Specifically, she asserts that the trial court did not consider (1) her right to have the court not order the appointment of an appraiser, (2) her right pursuant to General Statutes § 52-408 to have the agreement to arbitrate voided as a result of fraud or duress and (3) her right to waive appraisal.

"Arbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law. . . . But a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." (Citations omitted; internal quotation marks omitted.) *A. Dubrueil & Sons, Inc.* v. *Libson,* 215 Conn. 604, 608, 577 A.2d 709 (1990). Accordingly, it seems that the requirement that the trial court must grant or deny an application to compel arbitration "according to the rights of the parties" refers to the arbitrability of the dispute.[11] The question of arbitrability entails both whether the parties have agreed to arbitration and what issues in particular are arbitrable.

"The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. . . . The intention of the parties is, in turn, a question of fact." (Citations omitted.) Id., 608–609.

[10] See footnote 3.

[11] "The exact meaning of the rights of the parties phrase has rarely been discussed in the reported decisions. The central issue raised by a petition to compel arbitration is whether the reluctant party has agreed to arbitrate the particular question in dispute. Thus, the arbitrability of the dispute, central to General Statutes § 52-409, is undoubtedly what is contemplated by 'the rights of the parties.' " R. Lease, "Judicial Interpretations and Applications of the Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 161 (1974).

Consequently, the finding of the trial court is subject to only limited appellate review to determine whether it is clearly erroneous in light of the evidence in the whole record. Id., 609; *Stelco Industries, Inc.* v. *Bette*, 2 Conn. App. 17, 21, 475 A.2d 1105 (1984).

The defendant first argues that the trial court improperly failed to consider her right to have the court not order the appointment of an appraiser. She asserts that there is no statutory authority for the court to appoint an appraiser. Section 52-411 (b), however, clearly provides that "[i]f no method is provided [in the arbitration agreement], or if a method is provided and any party thereto fails to use the method, or if for any other reason there is a failure in the naming of an arbitrator or arbitrators or an umpire . . . upon application by a party to the arbitration agreement, the superior court . . . shall appoint an arbitrator or arbitrators or an umpire, as the case may require."[12] See also *Covenant Ins. Co.* v. *Banks*, supra, 177 Conn. 278–79. Also, the defendant does not claim nor is there evidence in the record that the appraisal clause in the insurance policy contained an agreement waiving the provision of § 52-411 (b). Therefore, the defendant did not have a right to have the court not appoint an appraiser.

The defendant also contends that the court did not consider her right to have the arbitration agreement voided as a result of fraud or duress. She argues that at the March 7, 1994 show cause hearing, she unsuccessfully attempted to present the trial court with evidence of duress suffered by her as a result of the plaintiff's insistence that she submit to arbitration.[13]

---

[12] See footnote 3.

[13] While the defendant also mentions fraud as a factor ignored by the trial court in its granting of the application, her appellate brief contains no discussion or supporting allegations of fraud. Accordingly, we decline

Section 52-408 provides that an arbitration agreement "shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." "This means that an arbitration agreement, like any other, can be declared void for fraud, misrepresentation, duress or undue influence, among other reasons not pertinent here. See 6 Williston, Contracts (Rev. Ed.) p. 5369." *Dewart* v. *Northeastern Gas Transmission Co.*, 140 Conn. 446, 449, 101 A.2d 299 (1953).

In this case, however, the defendant does not claim that duress occurred at the time of the formation of the arbitration agreement, that is, at the time when she signed the insurance policy containing the appraisal clause. Consequently, the defendant did not have a right to have the agreement declared void for duress.

Finally, the defendant argues that the trial court failed to consider her right to waive appraisal. She relies on *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 11, 110 A.2d 464 (1954), for the proposition that "an arbitration clause may be waived by the parties or by the one entitled to its benefit." She asserts that she wants to waive appraisal in order to preserve her right to sue the plaintiff for breach of contract and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiff responds that, under the insurance policy, arbitration is a condition precedent to litigation.

In *Batter Building Materials Co.* v. *Kirschner*, supra, 142 Conn. 1, after the plaintiffs brought an action against the defendants for breach of contract, the defendants moved for a stay until the subject matter of the suit was submitted to arbitration, as provided for in the contract. The trial court granted the stay

to review this claim because it has been inadequately briefed. Practice Book § 4065; *State* v. *Yopp*, 35 Conn. App. 740, 750, 646 A.2d 298 (1994).

after determining that the disputed issue was arbitrable and that the contract provided that arbitration was a condition precedent to litigation. On appeal, the plaintiffs claimed, inter alia, that the defendants had waived their right to insist on arbitration because of an unjustifiable delay between the breach of contract and request for submission to arbitration.

The case at hand is distinguishable from *Batter Building Materials Co.*, where the party wanting to sue claimed that the party wanting to arbitrate had waived its right to rely on the provision that arbitration is a condition precedent to litigation. Here, the party wanting to sue is claiming that she has waived her own right to arbitration, while the party wanting to arbitrate relies on the provision that arbitration is a condition precedent to litigation. For this reason, the defendant's reliance on *Batter Building Materials Co.* is misplaced. Her assertion of a right to waiver amounts to an attempt to escape her prior agreement to submit to arbitration.[14] For the foregoing reasons, we conclude that the trial court did not improperly fail to consider the rights of the parties before ordering the defendant to proceed with appraisal.

B

The defendant next argues that the trial court improperly granted the plaintiff's application because §§ 52-410 and 52-411 provide statutory relief only for an aggrieved insured, not an insurer. In support of this

---

[14] The defendant also asserts that the court failed to take due consideration of the amount of time that the plaintiff allowed to elapse before requesting the defendant to submit to appraisal. We construe this to be a claim that the plaintiff has waived its right to appraisal because of an unjustifiable delay. A review of the record convinces us that, as in *Batter Building Materials Co.* v. *Kirschner*, supra, 142 Conn. 13, we cannot conclude that, "as a matter of law, the time between the ripening of the dispute and the demand for arbitration was unreasonable and that the [plaintiff] consequently waived [its] right to insist upon arbitration."

position, she cites *Covenant Ins. Co.* v. *Banks*, supra, 177 Conn. 278, in which our Supreme Court noted that "§§ 52-410 and 52-411 . . . provide an appropriate procedure for an insured who needs judicial assistance when an insurer unreasonably refuses to proceed with the appraisal procedure specified in the insurance contract." The defendant asserts that *Covenant Ins. Co.* dictates that §§ 52-410 and 52-411 are "quite clearly a protection for the rights of the insured, but *only* the insured." (Emphasis added.)

We refuse to read either *Covenant Ins. Co.* or §§ 52-410 and 52-411 so narrowly. The Supreme Court's comments in *Covenant Ins. Co.* were appropriate for the facts of the case, where it was the insured who sought appraisal. The reasoning is equally applicable here, where the insurer seeks judicial assistance to compel a reluctant insured to proceed with appraisal.

C

Finally, the defendant claims that the trial court improperly granted the plaintiff's application because the plaintiff presented no evidence of an appraisal agreement or of a dispute as to the value of the loss. As noted previously, because the issue of arbitrability ultimately is a question of fact, our review is limited to a determination of whether the finding of the trial court was clearly erroneous. See *A. Dubrueil & Sons, Inc.* v. *Libson*, supra, 215 Conn. 608–609; *Stelco Industries, Inc.* v. *Bette*, supra, 2 Conn. App. 21.

In its application to compel appraisal, the plaintiff alleged the existence of a contract of insurance, which provided that "if the [defendant] and the [plaintiff] should fail to agree on the amount of the loss, either party may demand that these amounts be determined by appraisal." The plaintiff also alleged that it and the defendant disputed the value of the loss. In her answer and at the show cause hearing, the defendant failed to

deny the existence of the appraisal agreement. The defendant now alleges that the parties actually agreed as to the value of the loss, but the record clearly indicates that the trial court could have reasonably found that a dispute existed. Consequently, we conclude that the court properly determined that an appraisal of the value of the loss was necessary so that the plaintiff could make payment to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.